## ·BUXTON *v.* TRAVER.

ERROR TO THE SUPREME COURT OF THE STATE OF CALIFORNIA.

No. 211. Submitted March 18, 1889. — Decided·April 1, 1889.

No portion of the public domain, unless it be in special cases, not affecting the general rule, is open to sale until it has been surveyed, and an approved plat of the township embracing the land has been returned to the local land office.

A settler upon public land, in advance of the public surveys, acquires no estate in the land which he can devise by will, or which, in case of his death intestate, will pass to his heirs at law, until, within the specified time after the surveys and the return of the township plat, he files a declaratory statement such as is required when the surveys have preceded settlement, and performs the other acts prescribed by law.

Section 2269 of the Revised Statutes has no application to the case of a settler who dies before the time arrives when the papers necessary to establish a preëmption right can be filed.

THE case which makes the federal question is stated in the opinion of the court.

*Mr. William Craig* and *Mr. Douglas Dyrenforth* for plaintiffs in error.

*Mr. A. L. Rhodes, Mr. A. T. Britton, Mr. A. B. Browne* and *Mr. W. J. Curtis* for defendants in error.

MR. JUSTICE FIELD delivered the opinion of the court.

This was a suit to charge the defendant Hattie L. Traver as trustee for the plaintiffs, of an undivided half interest in certain lands in San Bernardino County, California, and was commenced in one of the Superior Courts of the State. To the complaint the defendants demurred; the demurrer was sustained and judgment entered that the suit be dismissed. On appeal to the Supreme Court of the State the judgment was affirmed; and the case is brought to this court on writ of error.

The complaint alleges that on the 2d of February, 1870, one Oscar Traver settled upon a quarter section of land in township two in San Bernardino County, California, and that until his death he lived upon, improved and cultivated the land; that, at the time of his settlement and continuously until the 1st day of July, 1879, it was public property of the United States, and was unoccupied and unsurveyed and subject to the right of preëmption; that no approved plat of the township was received at the United States District Land Office at Los Angeles, which embraced the land in controversy, until July 1st, 1879; that at the time of his settlement, and thereafter until his death, which occurred January 2d, 1877, he was a citizen of the United States, and entitled to the benefit of the preëmption and homestead laws; that he settled upon, improved the land, and erected a building thereon, intending to acquire a title thereto from the United States as soon as he possibly could; that at the time of his settlement he was a single person and remained so until the 13th of December, 1870, when he intermarried with the defendant Hattie L. Traver; that on his death he left surviving him his widow and two daughters, Lizzie and Annie, and the three were his only

heirs at law; that the daughters have since married and are the plaintiffs in this suit; that the deceased died intestate; and that no administrator of his estate has been appointed.

The complaint further alleges that on the 16th of July, 1878, the defendant Hattie L. Traver filed in the United States District Land Office at Los Angeles, a preëmption declaratory statement describing the land, alleging settlement on the 2d of February, 1870, and stating her intention to claim the same under the preëmption laws of the United States; that soon after the death of Oscar Traver she wrote to the plaintiffs at San Francisco, informing them of the death of their father, and representing that he had not left any property; that this representation was made with intent to deceive them and prevent them from filing the necessary papers to complete his preëmption and homestead rights; that in December, 1882, they discovered for the first time that she had completed those rights and obtained the patent; that she had lived upon the land and received to her own use its rents and profits since his death, which are stated upon information and belief to be $2500; that the land is of the value of one thousand dollars per acre; that the other defendants named claim to have some interest in the land by purchase from her; that such purchase was made with notice of the plaintiffs' rights; and that she denies that they have any rights in the lands, or in the rents, issues and profits thereof. The prayer of the complaint is that the defendant Hattie L. Traver may be charged, as trustee for plaintiffs of an undivided half interest in the lands, and in the rents, issues and profits thereof, and account for and pay over to them such interest in the rents, issues and profits; that the other defendants be adjudged to have no interest in the land or in any part thereof; and that the plaintiffs may have such other and further relief as to the court may appear to be just.

The entire claim and contention of the plaintiffs rest upon two grounds: 1st, that the deceased acquired by his occupation of unsurveyed lands of the United States a right of preëmption to them under the laws of the United States; and, 2d, that the plaintiffs, as heirs at law of the deceased, were equally

entitled, with his widow, under § 2269 of the Revised Statutes, to the benefit of the patent obtained by her. That section is as follows:

" Where a party entitled to claim the benefits of the preemption laws dies before consummating his claim, by filing in due time all the papers essential to the establishment of the same, it shall be competent for the executor or administrator of the estate of such party, or one of the heirs, to file the necessary papers to complete the same; but the entry in such cases shall be made in favor of the heirs of the deceased preemptor, and a patent thereon shall cause the title to inure to such heirs, as if their names had been specially mentioned."

Neither of these grounds is well taken. No portion of the public domain, unless it be in special cases not affecting the general rule, is open to sale until it has been surveyed and an approved plat of the township embracing the land has been returned to the local land office. A settlement upon the public lands in advance of the public surveys is allowed to parties who in good faith intend, when the surveys are made and returned to the local land office, to apply for their purchase. If, within a specified time after the surveys, and the return of the township plat, the settler takes certain steps, that is, files a declaratory statement, such as is required when the surveys have preceded settlement, and performs certain other acts prescribed by law, he acquires for the first time a right of preemption to the land, that is, a right to purchase it in preference to others. Until then he has no estate in the land which he can devise by will, or which, in case of his death, will pass to his heirs at law. He has been permitted by the government to occupy a certain portion of the public lands and therefore is not a trespasser, on his statement that when the property is open to sale he intends to take the steps prescribed by law to purchase it; in which case he is to have the preference over others in purchasing, that is, the right to preempt it. The United States make no promise to sell him the land, nor do they enter into any contract with him upon the subject. They simply say to him—if you wish to settle upon a portion of the public lands, and purchase the title, you can occupy any

unsurveyed lands which are vacant and have not been reserved from sale; and, when the public surveys are made and returned, the land not having been in the meantime withdrawn from sale, you can acquire, by pursuing certain steps, the right to purchase them. If those steps are from any cause not taken, the proffer of the government has not been accepted, and a title in the occupant is not even initiated. The title to the land remains unaffected, and subject to the control and disposition of the government, as before his occupancy. This doctrine has been long established in this court. Thus in *Frisbie* v. *Whitney*, 9 Wall. 187, 193, where the subject was fully considered, it was held that occupation and improvement on the public lands, with a view to preëmption, did not confer a vested right in the land so occupied. Speaking of the settlement in that case, the court, by Mr. Justice Miller, said: "So far as anything done by him is to be considered, his claim rests solely upon his going upon the land and building and residing on it. There is nothing in the essential nature of these acts to confer a vested right, or, indeed, any kind of claim to land, and it is necessary to resort to the preëmption laws to make out any shadow of such right." The same doctrine was affirmed in *The Yosemite Valley Case*, 15 Wall. 77, the court observing that until all the preliminary steps to the acquisition of the title of the United States, prescribed by law, have been complied with, the settler has not acquired any title against the United States. Among these are the entry of the land at the appropriate land office and the payment of its price. "Until such payment and entry," the court added, "the acts of Congress give to the settler only a privilege of preëmption in case the lands are offered for sale in the usual manner; that is, the privilege to purchase them in that event, in preference to others. The United States by those acts enter into no contract with the settler, and incur no obligation to any one that the land occupied by him shall ever be put up for sale. They simply declare that in case any of their lands are thrown open for sale, the privilege to purchase them in limited quantities, at fixed prices, shall be first given to parties who have settled upon and improved them." Nothing was

done in this case by the deceased occupant beyond his occupancy, and therefore nothing to initiate a title in him; not even the privilege of purchasing the land was acquired by him. His death occurred two years before the surveys were made and returned.

Section 2269 of the Revised Statutes, upon which the plaintiffs rely, has no application to the case presented by them. That section was taken from § 2 of the act of March 3d, 1843, 5 Stat. 620, "to authorize the investigation of alleged frauds under the preëmption laws, and for other purposes." At that time no settlement on unsurveyed lands was permitted by the laws of the United States, and the second section was intended to secure to the heirs of the deceased preëmptor a claim to the benefit of the preëmption laws, which he had initiated, but not completed before his death, " by filing in due time all the papers essential to the establishment of the same." His executor or administrator, or one of his heirs, was in that event allowed to file such papers. No claim of the deceased in this case was lost by any failure to file the necessary papers. The time for any papers to be filed did not arrive during his life.

The contention of the plaintiffs in error is, that the section, upon a correct construction, extends to heirs of a deceased occupant of unsurveyed public land of the United States, who during his life did nothing beyond its occupation and improvement, the same rights which are conferred upon heirs of a person entitled at the time of his death to the benefits of the preëmption laws. It is upon the supposed denial of such rights to the plaintiffs by the court below that the jurisdiction of this court is invoked; it is upon that denial alone that the jurisdiction can be maintained. What we have said as to the legal effect of the deceased's occupation and improvement shows that no title was initiated or right of preëmption created by them, and of course nothing was left by the deceased to be completed by his heirs, and hence there was no denial of any rights to them under the statute, as claimed.

*Judgment affirmed.*