## NORTHERN PAC. RY. CO. v. McCORMICK.

(Circuit Court, D. Montana. August 16, 1898.)

### No. 115.

1. PUBLIC LANDS—RIGHTS ACQUIRED BY OCCUPANCY.
   One who settles upon and improves unsurveyed public land, but dies before its survey, or without having taken any steps to procure title, no intention to acquire the title, upon its survey, being shown, has no right in the land which could pass by devise or inheritance.

2. SAME—LANDS WITHDRAWN UNDER RAILROAD GRANT.
   A settler upon unsurveyed public land, which is afterwards withdrawn from the market on account of a proposed railroad, until he has taken the steps required by Rev. St. § 2281, to give notice of his claim and obtain title, has no right in the land which can be conveyed or which will pass on his death.

3. SAME—PACIFIC LAND GRANTS—WITHDRAWAL OF LAND FROM ENTRY.
   Under the Pacific Railroad grant of July 2, 1864, lands remained subject to disposal by the government to settlers, under the laws of congress, until the filing of the map of the definite location of the railroad identified the particular lands passing.

4. SAME—RIGHT OF HOMESTEAD ENTRYMAN—RELATION OF PATENT.
   Under the statutory provision that the rights of one making entry under the homestead laws shall relate to the date of his settlement, one who settled upon land included within the limits of the Pacific Railroad grant, before the filing of the map of definite location of the road showing that such land was included, and immediately on the survey of the land followed his settlement by an entry under the homestead law, acquired title as against the railroad company.

5. SAME—SETTLEMENT AND IMPROVEMENT—EFFECT OF FINDING BY LAND DEPARTMENT.
   A finding by the land department that a homestead entryman has complied with the requirements of the law as to settlement and improvements is conclusive upon the courts.

F. M. Dudley, for plaintiff.
E. W. Toole, for defendant.

KNOWLES, District Judge. This suit was instituted by the Northern Pacific Railroad Company against the defendant, John Mc-

Cormick, to recover from him the possession of the S. ½ of the N. W. ¼, and W. ½ of the S. W. ¼, of section 21, township 13 N., range 18 W. of the principal meridian for Montana. Subsequent to the commencement of this action the Northern Pacific Railway Company, a corporation organized under the laws of Wisconsin, succeeded to all the rights of the said Northern Pacific Railroad Company in and to said premises, and by an order of this court became the plaintiff in this cause. An agreed statement of facts was filed in this cause. From this it appears that congress granted to the said Northern Pacific Railroad Company certain lands to aid it in the construction of its railroad. The said road was to be constructed from Lake Superior to Puget Sound. The land grant was to be of public lands to which the United States had full title at the date of the grant, and was not reserved, sold, granted, or otherwise appropriated and free from preemption or other claims or rights at the time the line of said road should be definitely fixed and a plat thereof filed in the office of the commissioner of the general land office. The extent of the grant was the odd sections of land for 40 miles on each side of the line of that part of said road which passed through Montana. It also appears in said agreement that said land in dispute was settled upon in January, 1864, by one W. B. S. Higgins. He placed upon said land about $2,000 worth of improvements, and inclosed a large portion thereof with a fence, and raised crops of grain, oats, wheat, and vegetables upon the same, and it is agreed he proposed to make thereon a home for himself. From the time of said settlement up to 1875 said Higgins occupied said land. In that year he died. His administrator sold all his right to said land, and the improvements thereon, to one William S. Gullett, who continued to occupy the same up to May, 1880. At that time he, the said Gullett, sold and conveyed his interest in said land and the improvements thereon to defendant, McCormick, who entered upon the same at the date of said conveyance, and possessed said land and improvements, and from that time occupied and farmed said land, up to the commencement of this action, and had the purpose of entering and obtaining the title to the same under the laws of the United States. Said land was not surveyed until the 23d day of March, 1885. On the 25th day of March, 1885, two days after said survey, defendant made application in the United States land office at Helena, Mont., to enter said land as a homestead. The Northern Pacific Railroad Company contested in said land office plaintiff's right to enter said land. The officers of said land office decided said contest in favor of defendant. The said Northern Pacific Railroad Company appealed from said ruling to the commissioner of the United States general land office. He affirmed the decision of the officers of the Helena land office. From this ruling the said Northern Pacific Railroad Company appealed to the secretary of the interior, who again affirmed the said decision. Subsequently a patent to the land was issued to defendant, conveying to him the legal title to said premises. It further appears from said statement that the Northern Pacific Railroad Company fixed the general route of its railroad on the 21st day of February, 1872, and that on the 6th day of July, 1882, said Northern Pacific Railroad Company definitely fixed the

line of its road in Montana, and filed a plat thereof in the office of the commissioner of the general land office. While there is a statement that Higgins occupied and cultivated said land from January, 1864, to 1875, there is no statement that he intended to obtain a patent to said land as soon as the same was surveyed. I am not sure that, under the decisions of the supreme court, this fact would make any difference as to the law of this case, if it did exist.

In the case of Buxton v. Traver, 130 U. S. 232, 9 Sup. Ct. 509, the supreme court, in considering the rights of a settler upon unsurveyed public lands, says:

"A settlement upon the public lands in advance of the public surveys is allowed to parties who, in good faith, intend, when the surveys are made and returned to the local land office, to apply for their purchase. If within a specified time after the surveys and the return of the township plat the settler takes certain steps,—that is, files a declaratory statement such as is required when the surveys have preceded settlement, and performs certain other acts prescribed by law,—he acquires for the first time a right of preemption to the land: that is, a right to purchase it in preference to others. Until then he has no estate in the land which he can devise by will, or which, in case of his death, will pass to his heirs at law. He has been permitted by the government to occupy a certain portion of public lands, and therefore is not a trespasser on his statement that, when the property is open to sale, he intends to take the steps prescribed by law to purchase it; in which case he is to have the preference over others in purchasing,—that is, the right to pre-empt it. The United States make no promise to sell him the land, nor do they enter into any contract with him upon the subject. They simply say to him, 'If you wish to settle upon a portion of the public lands, and purchase the title, you can occupy any unsurveyed lands which are vacant and have not been reserved from sale, and when the public surveys are made and returned, the land not having been, in the meantime, withdrawn from sale, you can acquire, by pursuing certain steps, the right to purchase them.' If those steps are from any cause not taken, the proffer of the government has not been accepted, and a title in the occupant is not even initiated. The title to the land remains unaffected, and subject to the control and disposition of the government, as before his occupancy."

In the case of Newhall v. Sanger, 91 U. S. 761, the supreme court defined the term "public lands" thus:

"The words 'public lands' are habitually used in our legislation to describe such as are subject to sale or other disposal, under general laws."

The views expressed in these two decisions force the conclusion that Higgins had acquired no such right in or to this land in question as would cause it to cease to be public land at the date of the grant to the Northern Pacific Railroad Company. I will not say but that had he occupied the land up to the time of survey, and had procured a patent for the same, it would not relate back to the date of settlement. But no such question is here presented. Certainly, without an expressed intention of entering or purchasing the land after survey, no rights could accrue to him therein.

It would appear that congress intended to give rights to settlers upon public lands as against railroad companies when settlement was made prior to the withdrawal of the same for railroad purposes. Section 2281, Rev. St., reads as follows:

"All settlers on public lands which have been or may be withdrawn from market in consequence of proposed railroads, and who had settled thereon prior to such withdrawal, shall be entitled to pre-emption at the ordinary

minimum to the lands settled on and cultivated by them; but they shall file the proper notices of their claims and make proof and payment as in other cases."

I do not suppose that, under this section, any land settled upon would cease to be public land until the proper papers were filed and the proper steps taken. Higgins did not avail himself of this statute, and his heir, if any he had, did not seek to obtain any title to the land. Gullett obtained no rights in regard to this land, as Higgins had acquired none which were subject to sale to him. Buxton v. Traver, supra.

I cannot see that there are any facts which show that up to the time defendant settled upon the land anything had occurred which took these lands out of the class known as "public lands." Defendant, however, settled upon the land before the Northern Pacific Railroad Company fixed the definite line of its road, and continued to occupy, cultivate, and improve the same until he obtained from the United States a patent therefor.

Section 3, Act May 14, 1880 (1 Supp. Rev. St. p. 282), provides that:

"Any settler who has settled or who shall hereafter settle on any of the public lands of the United States, whether surveyed or unsurveyed, with the intention of claiming the same under the homestead laws, shall be allowed the same time to file his homestead application and perfect his original entry in the United States land offices as is now allowed to settlers under the pre-emption laws to put their claims on record, and his right shall relate back to the date of settlement the same as if he settled under the pre-emption laws."

In the case of Shepley v. Cowan, 91 U. S. 330–337, the supreme court held that a patent related back to the date of settlement upon the land patented, "as disclosed in the declaratory statement or proof of the settler to the register of the local land office."

Defendant's rights, therefore, relate back to a period prior to the fixing of the definite route of plaintiff's road. The question, then, presented is, does this give the defendant the better right?

In the case of Railroad v. Sanders, 166 U. S. 620, 17 Sup. Ct. 671, the supreme court, in regard to the grant of land to the Northern Pacific Railroad Company, said, in effect, that it must be conceded that:

"Lands were expressly excepted from the grant made for the benefit of the Northern Pacific Railroad that were not free from pre-emption or other claims or rights at the time the line of the road was definitely fixed and a plat thereof filed in the office of the commissioner of the general land office."

Again:

"We have seen that the act of July 2, 1864, under which the railroad company claims title, excluded from the grant made by it all lands that were not, at the time the line of the road was definitely fixed, free from preemption or other claims or rights."

Again:

"The company acquired, by fixing its general route, only an inchoate right to odd-numbered sections granted by congress, and no right attached to any specific section until the road was definitely located and the map thereof filed and accepted. Until such definite location, it was competent for congress to dispose of the public lands on the general route of the road

as it saw proper. Provision for the indemnification of the company in such an emergency was made by a clause in the act of 1864 providing that wherever, prior to the date of definite location, any of said sections or parts of sections shall have been granted, sold, reserved, occupied by homestead settlers, or pre-empted, or otherwise disposed of, other lands shall be selected by said company in lieu thereof, under the direction of the secretary of the interior."

Again, the court, in considering the construction of section 6 of the said act of July 2, 1864, said:

"The only ground upon which a contrary view can be rested is the provision in the sixth section of the act of 1864, that the odd sections of land hereby granted shall not be liable to sale or entry or pre-emption, before or after they are surveyed, except to said company as provided by this act. It must be taken in connection with section 3, which manifestly contemplated that rights of pre-emption or other claims and rights might accrue or become attached to the lands granted after the general route of the road was fixed, and before the line of definite location was established."

These views in the main affirm the position taken by this court in the case of Railroad Co. v. Sanders, 46 Fed. 239, and Id., 47 Fed. 604, and maintain the position that the fixing of the general route of plaintiff's railroad did not withdraw any land from disposal under the laws of congress. When the definite route of said road was fixed, then for the first time it was determined what lands were granted to plaintiff, and up to that date a pre-emption claim or other claim or right could be initiated to any lands within the limit of the grant. Before the definite line of plaintiff's road was fixed, defendant had initiated a homestead right upon the land in dispute. As to whether he complied with the law as to settlement and improvements, and took the necessary steps to entitle him to a patent for the same, was a matter for adjudication in the land department of the government. It appears that plaintiff contested defendant's right to a patent before the government's land officers, and the said officers found in favor of defendant. This determination binds this court. Railway Co. v. Dunmeyer, 113 U. S. 629, 5 Sup. Ct. 566. This determination of the officers of the land department included the adjudication of the intention of defendant when he settled upon this land. The patent relates back to the date of settlement. It appears, then, that defendant had title to said land when the route of plaintiff's road was fixed, and hence it was excluded from plaintiff's grant, although a part of an odd section within the limits of the same. I therefore find that plaintiff is not entitled to the possession of the land described in its complaint. It is therefore ordered that defendant have judgment against plaintiff for his costs.