UNITED STATES v. OREGON & C. R. CO.

(Circuit Court, D. Oregon. December 12, 1904.)

No. 2,657.

1. PUBLIC LANDS—RAILROAD GRANT—CANCELLATION OF PATENT.

Where the United States relies upon a private entry of a tract of land, which was of record and uncanceled at the time of the attaching of a railroad grant under which the land was patented, to except such tract from the grant, and as ground for cancellation of the patent, it must be shown either that the entryman was then residing on the land or that he had made final proof and payment, when without one or the other his right had been lost by abandonment.

2. SAME—LANDS EXCEPTED FROM GRANT—PRE-EMPTIONS.

Under a grant of lands to a railroad company which excepted from its operation such lands within the place limits as should be found to have been "granted, sold, reserved, occupied by homestead settlers, pre-empted, or otherwise disposed of," such exception includes lands upon which pre-emption filings had been made and accepted by the land office in compliance with the law relating to pre-emptions. although such lands had not been paid for at the time of the attaching of the grant.

3. SAME—HOMESTEAD CLAIMS—LANDS OCCUPIED BY HOMESTEAD SETTLERS.

An exception from a railroad grant of lands which should be found to be "occupied by homestead settlers * * * or otherwise disposed of" includes lands so occupied with an intention to obtain title thereto under the homestead law, although no application for entry thereof had been made; and also lands for which such application had been made and accepted, whether occupied by the claimant at the time or not, such lands being within the term "otherwise disposed of."

4. SAME—ATTACHING OF GRANT—APPROVAL OF MAP OF DEFINITE LOCATION.

The grant of lands to the Oregon & California Railroad Company (Act July 25, 1866, 14 Stat. 239, c. 242), which excepts lands disposed of, reserved, etc., with reference to the time when the company "shall file in the office of the Secretary of the Interior a map of the survey of said railroad," at which time it is provided that "the Secretary of the Interior shall withdraw from sale public lands herein granted," etc., does

not attach to lands upon which homestead applications were made be-
tween the filing of the map of definite location and its approval by the
Secretary of the Interior.

5. SAME—CANCELLATION OF PATENTS ERRONEOUSLY ISSUED—CONSTRUCTION
   AND VALIDITY OF STATUTE.
      Act March 3, 1887, c. 376, 24 Stat. 556 [U. S. Comp. St. 1901, p. 1595],
      and March 2, 1896, c. 39, 29 Stat. 42 [U. S. Comp. St. 1901, p. 1603],
      which give the United States the right to have canceled patents to lands
      erroneously issued under a railroad grant, and also to recover from the
      grantee the government price of lands so patented and sold to bona fide
      purchasers, are valid, and a suit to enforce such rights may be main-
      tained in a court of equity.

In Equity.

John H. Hall, U. S. Atty.

Wm. D. Fenton and Wm. Singer, Jr., for defendant.

BELLINGER, District Judge. This is a suit to cancel patents al-
leged to have been erroneously issued for lands within the place limits
of the grant of lands to the defendant company made by Congress on
July 25, 1866 (14 Stat. 239, c. 242), and to recover the price of such of
the lands so patented as may have been sold by the defendant to bona
fide purchasers. The grant was of every alternate section of public
land, not mineral, designated by odd numbers, to the amount of 10 such
sections on each side of the line of road; and it provided that when
any of said alternate sections should be found to have been "granted,
sold, reserved, occupied by homestead settlers, pre-empted, or other-
wise disposed of," other lands in lieu thereof, designated by odd num-
bers, and within 10 miles of the limits of the first-named sections, should
be selected. The particular lands in dispute are alleged to have been
excepted from the grant by reason of homestead and pre-emption
claims subsisting at the time it became effective. There is one cash
entry claimed, but it is alleged in the answer, and the fact seems to be
conceded, that this entry was canceled, and there is no contention in the
case respecting it. There is also a claim—that of J. W. Dougherty—
arising under the donation law. Dougherty's donation notification was
filed on February 14, 1855. This claim was of record and uncanceled
when the map of definite location was filed, but neither final proof nor
payment had been made. The stipulation of facts is silent as
to whether Dougherty was residing upon this donation at the time
the map of definite location of defendant's road was filed, and without
such residence the claim was abandoned. Final proof or continued
residence was necessary to the life of this donation. The former is
negatived by the stipulation of facts, and there is no presumption in
favor of the latter. Oregon & C. R. Co. v. United States, 190 U. S.
186, 23 Sup. Ct. 673, 47 L. Ed. 1012. The facts relied upon to except
the particular land from the grant must be shown, and in this case they
are not shown. Upon one of the parcels of land in question there
were filed two pre-emption declaratory statements—one by John Morin,
on October 20, 1867; and one by Wm. A. Mills, on September 15,
1868. The amended stipulation of facts as to the Morin filing is that
final proof or payment was never made or tendered under the filing
made. The first stipulation of facts as to this pre-emption claim was

that the declaratory statement was on file and of record, uncanceled, at the time the map of definite location was filed. From the amended stipulation of facts it must be presumed that the declaratory statement in question was canceled prior to the filing of the map—a fact which explains the later filing by Mills, so that further reference to Morin's filing is unnecessary. There are seven pre-emption and four homestead claims relied upon by the government to take the lands claimed out of the railroad grant. From the stipulation of facts it appears that in all these cases the lands claimed have been sold by the company to bona fide purchasers, and there is no claim of interest in any of the original claimants, the contention being that because of these claims the grant did not attach to the particular parcels, and that upon the subsequent abandonment of these pre-emption and homestead claims the lands covered by them reverted to the government.

It is argued for the railroad company that the lands upon which mere pre-emption filings have been made are not pre-empted lands and within the exception in the grant, and the cases of Hutchings v. Low, 15 Wall. 77, 21 L. Ed. 82, Frisbie v. Whitney, 9 Wall. 187, 19 L. Ed. 668, and Buxton v. Traver, 130 U. S. 232, 9 Sup. Ct. 509, 32 L. Ed. 920, are cited to the effect that "until payment and entry the acts of Congress give to the settler only a privilege of pre-emption in case the lands are offered for sale in the usual manner; that is, the privilege to purchase them in that event in preference to others." The first of these cases was one where there was a settlement on unsurveyed lands in the state of California, with the intention on the part of the settler to acquire the same under the pre-emption laws of the United States. Thereafter Congress passed an act granting to the state of California a tract of land for public use, resort, and recreation, which included the land so settled upon. It was held, following the earlier case of Frisbie v. Whitney, 9 Wall. 187, 19 L. Ed. 668, that mere occupation and improvement of any portion of the public lands, with a view to pre-emption, do not confer upon the settler any right in the land occupied as against the United States, or impair in any respect the power of Congress to dispose of the land in any way it may deem proper; and that this power in Congress only ceases when all the preliminary acts prescribed by those acts for the acquisition of the title, including the payment of the price of the land, have been performed by the settler. These cases are commented upon and approved in the later case of Buxton v. Traver, 130 U. S. 232, 9 Sup. Ct. 509, 32 L. Ed. 920, where it is decided, in effect, that if a settler upon unsurveyed lands, within a specified time after the surveys are made, makes application to purchase (that is, files a declaratory statement such as is required when the surveys have preceded settlement), and performs certain other acts prescribed by law, including the payment of its price, he acquires for the first time a right of pre-emption to the land (that is, a right to purchase it in preference to others). It does not follow from what is decided in these cases that the word "pre-empted," as used in excepting lands from railroad or other grants, is necessarily restricted to such lands as have been paid for. The cases cited did not involve the definition to be given the word "pre-empted." The question decided was that mere occupation and improvement of unsurveyed lands with a view to pre-

emption conferred upon the settler no right as against the United States, and did not impair the power of Congress to dispose of the land settled upon in any way it might deem proper. The question to be decided in this case is whether the exception out of the grant in question of "pre-empted" lands includes lands upon which pre-emption filings have been made and accepted by the land office in compliance with the laws relating to pre-emptions.

The defendant refers to the several acts granting lands to the Union and Central Pacific Railroad Companies, the Texas Pacific, Northern Pacific, Atlantic and Southern Pacific, and the Oregon Central Railroad Company, as to which it has been uniformly held that lands covered by pre-emption filings were within the exceptions from the grants of "pre-emption or other claims," "pre-emption or homestead rights," and lands "to which a pre-emption or homestead claim is found attached." The difference between these exceptions and that under consideration is urged to show that lands covered by pre-emption filings were subject to the defendant's grant, and properly patented to the company. But it is a rule of statutory construction that statutes having similar objects are to be construed alike, and so the construction which has been put upon acts on similar subjects, even though the language should be different, should be referred to. Endlich on Interpretation of Statutes, § 52. These statutes, taken together, disclose the policy of the government in making exceptions of lands from railroad grants. It is against sound policy that the settlement and consequent development of the country should be retarded by withholding large portions of the public lands from settlement under the pre-emption and homestead laws until such time as it can be known by the location of the lines of the aided railroads whether the grants will attach to them. The public inconvenience that would result from the withdrawal of all the alternate odd-numbered sections of public land to await the location of a land grant railroad is illustrated in the present case. This grant was made in 1866. The first, second, and third sections of the road were located in the years 1870–1871. The maps of location of the remaining seven sections were filed in 1882, 1883, and 1884. Prior to the location of the line of road the limits of the grant could not, of course, be known, and upon the construction of the statute contended for by the defendant, an intended pre-emptioner, who had settled upon and improved his pre-emption claim, as he is required to do before he can file his declaratory statement, would run the risk of being cut off in his right notwithstanding the utmost diligence on his part. Such a result would be contrary to the established policy of the government, and would result in a sacrifice of public interests. The considerations for this particular grant and the conditions relating to it were the same as in the other grants, and I am of the opinion that Congress intended at least the same exception in respect to pre-emption and homestead rights and claims in this case that it did in the others. I therefore interpret the word "pre-empted," used to designate land excepted from the grant in the act of July 25, 1866, c. 242, 14 Stat. 239, to mean lands upon which pre-emption filings were made and accepted in conformity with law. The stipulation of facts does not state that these pre-emption claimants had settled upon and improved the lands covered by the pre-emption claims;

but this must be presumed, inasmuch as the law does not permit the filing of declaratory notices without proof of such settlements and improvements.

The grant excepts lands occupied by "homestead settlers." It does not appear that the homestead claims relied upon were those of settlers, and there is no exception in terms in favor of homestead claimants not settlers. I assume that this exception was intended to provide for persons who had settled upon the public lands intending to enter the same as homesteads, but had not made the showing and application before the local land office and the payment necessary to give them a right under the homestead laws. The later act of June 10, 1872, c. 424, § 3, 17 Stat. 381, Rev. St. § 2315 [U. S. Comp. St. 1901, p. 1421], provides for settlers of this class. It does not follow that Congress intended to grant the lands of homesteaders, not settlers, who had fully complied with the law. Settlement is not a prerequisite to a homestead filing. A person qualified to become a homesteader is permitted to make his homestead application to the register of the local land office upon making the prescribed affidavit, and upon payment of a fee of $5 when the entry is of not more than 80 acres, and on payment of $10 when the entry is for more than 80 acres. When the offer thus made has been accepted by the filing of the required affidavit and the homestead application and by the payment of the fee provided for, the applicant has acquired a vested right. The lands covered by the homestead application are "disposed of" within the exception in the grant. But, whether within that exception or not, such lands are not subject to disposition by Congress in violation of the obligation which the government has assumed to issue the patent to which the homesteader is "entitled" upon proof of the subsequent residence and cultivation required by law.

Two of the homestead applications in the case were made after the map of definite location was filed in the office of the Secretary of the Interior, and before approval by that office. The exception in the grant to the Northern Pacific Railroad Company was of lands not reserved, etc., "at the time the line of said road is definitely fixed and a plat thereof filed in the office of the Commissioner of the General Land Office." In the grant to the defendant company the exception is with reference to the time when the company "shall file in the office of the Secretary of the Interior a map of the survey of said railroad," at which time it is provided that "the Secretary of the Interior shall withdraw from sale public lands herein granted," etc. The Supreme Court, construing the former of these grants, held that no right attached to any specific section until the road was definitely located and the map thereof filed and accepted. N. P. R. R. Co. v. Sanders, 166 U. S. 620, 17 Sup. Ct. 671, 41 L. Ed. 1139; U. S. v. O. & C. Railroad Co, 176 U S. 44, 20 Sup. Ct. 261, 44 L. Ed. 358. There is nothing to distinguish the two grants so far as the effect that is to be given to the filing of the map of location is concerned. The construction that requires acceptance of the location as filed applies with equal force in each case. The grant therefore did not attach to the lands upon which homestead applications were made between the filing of the map of definite location and its approval by the Secretary of the Interior.

The act of March 3, 1887, c. 376, 24 Stat. 556 [U. S. Comp. St. 1901, p. 1595], provided for the cancellation of patents wrongfully issued to railroad companies, for the issue of new patents to innocent purchasers, and for the recovery from such companies of the government price for the lands so patented and sold. I conclude, contrary to the contention of the defendant, that the United States, under this act, could, after cancellation of the erroneous patent, also recover from the companies the value of the land in question, since the cancellation provided for was not to remedy the wrong done to the United States, but was a step in a proceeding adopted to protect innocent purchasers from the consequences of the companies' wrongful acts. To the same effect is the act of 1896. Act March 2, 1896, c. 39, 29 Stat. 42 [U. S. Comp. St. 1901, p. 1603]. The confirmation of title in the good-faith purchasers is intended to right the wrongs done such purchasers at the cost of the companies responsible therefor to the extent of the government price of the lands surrendered by the United States for that purpose. It does not ratify the wrong done to the United States, but provides relief for the innocent purchaser against its consequences at the cost of the wrongdoer. These companies will not be heard in a court of equity to say: "We did not agree to pay for these lands. We took them and sold them without right. Your remedy is against our innocent grantees to get back what we had no right to convey. You cannot ratify their title without condoning our wrong." This construction put upon the act of 1896 does not give it a retroactive effect. The act does not create a liability, but provides a means of enforcing one already existing.

As to the contention that the case is not one of equitable cognizance, it is enough to say that suits for cancellation are of equitable cognizance, and equity, having taken jurisdiction for such purpose, may go on, and grant the relief of pecuniary compensation, if the facts disclosed in the trial should require it. But, without this, the suit is expressly authorized by the act of 1887, as amended by implication of the act of 1896.

The United States is entitled to recover the minimum government price for the lands covered by the pre-emption and homestead applications named in the bill of complaint, and such will be the decree.