UNITED STATES v. OREGON & C. R. CO.

(Circuit Court, D. Oregon. March 18, 1907.)

No. 2,286.

**1. PUBLIC LANDS—RAILROAD GRANTS—PASSAGE OF TITLE.**

The title to land lying within the primary or place limits of a railroad grant passes ordinarily to the railroad company at the time of the filing of the map of definite location of the line of the railroad and the acceptance and approval thereof by the Secretary of the Interior, while the title to land within the indemnity limits does not pass until there is a selection under the direction or with the approval of the Secretary of the Interior.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 41, Public Lands, § 232.]

**2. SAME—DONATION CLAIM—ABANDONMENT.**

Where a settlement under the donation act was made on land within the primary limits of a railroad grant and was finally abandoned without completion of the steps necessary to perfect title prior to the filing of the railroad's map of definite location and the approval thereof by the Secretary of the Interior in January, 1870, such land was not reserved from sale, but passed under the grant, though the records in the Land Office did not show that the donation claim had been abandoned.

In Equity.

This is a suit for the cancellation of a patent issued by the general government to the defendant railroad company July 12, 1871, so far as it purports to grant to said company lots 5 and 6, section 3, township 7 south, range 3 west of the Willamette meridian, or, in the event that the land has been conveyed to an innocent purchaser for value, then it is prayed that plaintiff may have a decree for the value thereof. The facts upon which the bill of complaint is predicated are, briefly, as follows:

The land lies within the primary limits of the land grant made by the act of Congress approved July 25, 1866, to which the defendant company has succeeded. The map of definite location of the railroad opposite and coterminous with the said lots was filed and approved by the Secretary of the Interior January 29, 1870. Some time in May, 1855, one Edmund F. Gholson settled upon the lots under the donation act, and on November 3d following he filed in the office of the Surveyor General of the United States for Oregon his donation notification covering the same. The parties to the suit have further stipulated that: "Thereafter the said Gholson abandoned the said lots without having paid for them; and the said Gholson was not residing on the said lots on July 25, 1866, nor did he reside thereon at any date after July 25, 1866, and the records of the General Land Office do not show that the claim had been abandoned by Gholson prior to the passage of said act of July 25, 1866, or the definite location of the line of road thereunder, or whether Gholson resided thereon for the period of four years." Aside from the stipulation, it is shown that Gholson lived with his wife upon the land until the last day of October, 1856, when they moved away, with no intention of returning; nor have they ever returned thereto.

See 133 Fed. 953.

Wm. C. Bristol, U. S. Atty.

Wm. D. Fenton and Wm. Singer, Jr., for defendant.

WOLVERTON, District Judge (after stating the facts). This case differs from that of Oregon & California Railroad Company v. United States, 190 U. S. 186, 23 Sup. Ct. 673, 47 L. Ed. 1012, in one particular only, and that consists in the fact that here the land in question lies within the primary or place limits of the grant to the railroad. There it was within the indemnity limits. The question is, does this difference lead to any different result? It has been established by the uniform decisions of the Supreme Court of the United States that the title to lands lying within the primary or place limits of the grant passes ordinarily to the railroad company at the time of the filing of the map of definite location of the line of the railroad, and the acceptance and approval thereof by the Secretary of the Interior. In Van Wyck v. Knevals, 106 U. S. 360, 366, 27 L. Ed. 201, Mr. Justice Field says:

"Until the map is filed with the Secretary of the Interior the company is at liberty to adopt such a route as it may deem best, after an examination of the ground has disclosed the feasibility and advantages of different lines. But when a route is adopted by the company and a map designating it is filed with the Secretary of the Interior and accepted by that officer, the route is established; it is, in the language of the act, 'definitely fixed,' and cannot be the subject of future change, so as to affect the grant, except upon legislative consent."

So in a later case, Sioux City, etc., Land Company v. Griffey, 143 U. S. 32, 38, 12 Sup. Ct. 362, 36 L. Ed. 64, Mr. Justice Brewer says:

"The first and principal question is at what time the title of the railroad company attached, whether at the time the map of definite location was filed in the General Land Office at Washington, or when, prior thereto, its line was surveyed and staked out on the surface of the ground. While the question in this precise form has never been before this court, yet the question as to the time at which the title attaches, under grants similar to this, has been often presented, and the uniform ruling has been that it attaches at the time of the filing of the map of definite location."

In a much later case, Tarpey v. Madsen, 178 U. S. 215, 223, 20 Sup. Ct. 849, 44 L. Ed. 1042, after citing authorities, the distinguished jurist has this further to say:

"By those cases it was settled that the time at which the title of the railroad company passed beyond question was that of the filing of an approved map of definite location in the office of the Secretary of the Interior."

So are all the authorities bearing upon the subject. See, also, Kansas Pacific Ry. Co. v. Dunmeyer, 113 U. S. 629, 5 Sup. Ct. 566, 28 L. Ed. 112. In a late case involving this identical grant—Oregon, etc., R. R. v. United States, 189 U. S. 103, 23 Sup. Ct. 615, 47 L. Ed. 726—it is held that:

"No right of the railroad company attaches or can attach to specific lands within indemnity limits until there is a selection under the direction or with the approval of the Secretary of the Interior."

This proposition will not be questioned.

Now, speaking of the grant relative to its effect as it respects the two kinds of lands, the court, in the case of Ryan v. Railroad Company, 99 U. S. 382, 386, 25 L. Ed. 305, says:

"Under this statute, when the road was located and the maps were made, the right of the company to the odd sections first named became ipso facto fixed and absolute. With respect to the 'lieu lands,' as they are called, the right was only a float, and attached to no specific tracts until the selection was actually made in the manner prescribed."

Recognizing the distinction, Mr. Justice Miller, in St. Paul Railroad v. Winona Railroad, 112 U. S. 720, 731, 5 Sup. Ct. 334, 28 L. Ed. 872, makes this further comment:

"The reason of this is that, as no vested right can attach to the lands in place—the odd-numbered sections within six miles of each side of the road—until these sections are ascertained and identified by a legal location of the line of the road, so in regard to the lands to be selected within a still larger limit, their identification cannot be known until the selection is made. It may be a long time after the line of the road is located before it is ascertained how many sections, or parts of sections, within the primary limits have been lost by sale or pre-emption. It may be still longer before a selection is made to supply this loss."

The only point of distinction, therefore, as it pertains to grants of land within the primary and those within the indemnity limits, is that, as to the primary, the grant attaches at the date of the filing of the map of definite location of the road and its approval by the Secretary of the Interior, while as to the indemnity lands it attaches at the date of actual selection by the railroad company and the approval of such selection by the Secretary of the Interior. Any right acquired in or to such lands, whether they be primary or indemnity, whereby they are segregated from the public domain, or, in other words, are appropriated in pursuance of law, anterior to the taking effect of the grant to the railroad company, operates to reserve them from the grant, unless there has been an abandonment of the right and the land has reverted to the public domain in the meantime. This is determined in effect by the case of the Oregon & California Railroad Company v. United States, 190 U. S. 186, 23 Sup. Ct. 673, 47 L. Ed. 1012. The grant there, being of indemnity lands, took effect at the date of selection and its approval by the Secretary of the Interior. But it was held that, as it appeared that there had been an abandonment of the donation by the claimant after the filing of his application and prior to the selection, the land had reverted to the public domain, and became and was subject to the grant; or, in other words, the abandonment having taken place prior to the time of selection, the lands were yet to be deemed public lands, so that they could not be said to be reserved, as it related to the grant under the act of Congress of 1866. The determination has exact application here, the grant becoming effective by the filing of the approved map of definite location, instead of by selection.

Judge Bellinger, in the case of United States v. Oregon & C. R. Co. (C. C.) 133 Fed. 953, 954, which was not as strong for the government as this, says:

"This claim was of record and uncanceled when the map of definite location was filed, but neither final proof nor payment had been made. The stipulation

of facts is silent as to whether Dougherty was residing upon this donation' at the time the map of definite location of defendant's road was filed, and without such residence the claim was abandoned. Final proof or continued residence was necessary to the life of this donation. The former is negatived by the stipulation of facts, and there is no presumption in favor of the latter. Oregon & C. R. Co. v. United States, 190 U. S. 186. The facts relied upon to except the particular land from the grant must be shown, and in this case they are not shown."

But the case of the Oregon & California Railroad v. United States, 190 U. S. 186, 23 Sup. Ct. 673, 47 L. Ed. 1012, is controlling, and it is unnecessary to discuss further the matters touching the abandonment of the claim. A reference to that case will disclose the potent and sufficient reasons for the decision, which is conclusive against the right of the plaintiff here to sustain the suit preferred. The bill of complaint will therefore be dismissed at the cost of the plaintiff.