### DOUGLASS v. RHODES.

(District Court, E. D. Arkansas, Jonesboro Division. May 8, 1922.)

1. Public lands ⬤ᵒ₂₉—Unsurveyed lands are not "public lands," open to entry and sale.

    Unsurveyed lands are not "public lands," within the meaning of the law, so as to be subject to sale, entry, or disposal.

    [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Public Land.]

2. Public lands ⬤ᵒ₃₄—Pre-emptor of unsurveyed lands has no vested right therein.

    A pre-emptor of lands which are unsurveyed, and therefore not yet open to entry, has no vested right to such lands, but only a preferential right to enter in the event that the United States makes no other disposal of the lands before they are open to public entry.

3. Public lands ⬤ᵒ₃₄—Congress can grant unsurveyed lands to another, regardless of pre-emption by third person.

    Congress had the power to grant unsurveyed public lands of the United States, as it did by Act Jan. 17, 1920, regardless of the right of a pre-emptor to a portion of such lands.

In Equity. Suit by Annie Viola Douglass against J. W. Rhodes. On motion to dismiss the complaint. Motion sustained.

T. E. Allyn, of Marked Tree, Ark., for plaintiff.

Davis, Costen & Harrison, of Blytheville, Ark., for defendant.

TRIEBER, District Judge. This is an action to cancel a patent of the United States to the defendant for the land in controversy, or to declare defendant to hold it in trust for the plaintiff. The facts are:

The land is a part of what is known as the "sunk lands," containing several thousand acres. The government claimed them, while numerous persons claimed them, by virtue of conveyances from the state of Arkansas, as having been granted to the state under the Swamp Land Act of 1820 (Comp. St. §§ 4958–4960), and also as riparian owners of the adjacent lands. A number of actions were instituted by the government in this court to establish its title. It was finally held that

these lands belonged to the government. United States v. Lee Wilson (D. C.) 214 Fed. 630, affirmed 245 U. S. 24, 38 Sup. Ct. 21, 62 L. Ed. 128. The lands were all unsurveyed until 1919, and the official survey was filed in the Little Rock land office in May, 1920.

In the year 1901 the plaintiff's husband pre-empted the land in controversy, moving on it with his family with the intention of homesteading it under the homestead laws when opened to entry. The husband died, and the plaintiff, his widow, continued to reside on it with her children. She and her husband made valuable improvements on the land, of the value of $1,500. On January 17, 1920, Congress passed an act (chapter 49, 41 Stat. p. 1458) granting to the defendant, and certain others named in the act, a preferential right to purchase certain lands, including this land, at $1.25 an acre, at any time within 90 days after the passage of the act and the filing of the plats of the corrected survey in the United States land office in Little Rock, Ark., in accordance with the divisions and allotments of a decree of the chancery court of Mississippi county, Ark.

The lands in controversy were the lands decreed to the defendant by the said chancery decree. On May 27, 1920, within a few days after the filing of the plats of the corrected survey, the defendant made entry of the lands at the Little Rock land office, paid the purchase money, and received a certificate of purchase. On March 1, 1921, the patent therefor was issued to him by the government.

[1] Upon these facts, should the motion to dismiss the complaint be sustained? Unsurveyed lands are not "public lands," within the meaning of the law, so as to be subject to sale, entry, or disposal under the laws of the United States. Newhall v. Sanger, 92 U. S. 761, 23 L. Ed. 769; Buxton v. Traver, 130 U. S. 232, 235, 9 Sup. Ct. 509, 32 L. Ed. 920; Bardon v. Northern Pacific R., 145 U. S. 535, 538, 12 Sup. Ct. 856, 36 L. Ed. 806; Barker v. Harvey, 181 U. S. 481, 490, 21 Sup. Ct. 690, 45 L. Ed. 963; Minnesota v. Hitchcock, 185 U. S. 373, 391, 22 Sup. Ct. 650, 46 L. Ed. 954.

"A settlement upon the public lands in advance of the public surveys is allowed to parties who in good faith intend, when the surveys are made and returned to the local land office, to apply for their purchase. * * * He has been permitted by the government to occupy a certain portion of the public lands, and therefore is not a trespasser, on his statement that when the property is open to sale he intends to take the steps prescribed by law to purchase it, in which case he is to have the preference over others in purchasing; that is, the right to pre-empt it. The United States make no promise to sell him the land, nor do they enter into any contract with him upon the subject. They simply say to him: If you wish to settle upon a portion of the public lands, and purchase the title, you can occupy any unsurveyed lands which are vacant and have not been reserved from sale; and, when the public surveys are made and returned, the land not having been in the meantime withdrawn from sale, you can acquire, by pursuing certain steps, the right to purchase them." Buxton v. Traver, 130 U. S. 232, 9 Sup. Ct. 509, 32 L. Ed. 920.

[2] That a pre-emptor has no vested right has been decided so many times that it has ceased to be an open question. A leading case is Frisbie v. Whitney, 9 Wall. (76 U. S.) 187, 193, 19 L. Ed. 668. In that case the court, after assuming that unsurveyed lands were open to pre-emption, as contended by plaintiff, said:

"But, resolving this difficulty in favor of complainant for the present, we are still of opinion that he had not acquired a vested right in the land when Congress acted upon the subject. What had he done? He had gone upon the land, built a house and barn, and perhaps inclosed some * * * ground. He had also applied to the register of the land office, and offered to make a declaration that he had done these things with the intention of making a permanent settlement, and claiming the land under the right of pre-emption. This is all. He had paid no money, nor had he then tendered any. The land officers refused to receive his declaration, and denied his right to pre-empt the land. He never has paid any money, has never received any certificate of pre-emption, and the register and receiver have never, in any manner, acknowledged or admitted his right to make pre-emption of that land. So far as anything done by him is to be considered, his claim rests solely upon his going upon the land and building and residing on it. There is nothing in the essential nature of these acts to confer a vested right, or indeed any kind of claim to land, and it is necessary to resort to the pre-emption law to make out any shadow of such right.

"The act of Congress on this subject, to which all the subsequent acts refer, and which prescribes the terms, and the manner of securing title in such cases, is the act of September 4, 1841 (5 Stat. at Large, 453). That was an act full of generosity, for it gave the proceeds * * * of the public lands to the States. The tenth section of the act provides that any person of the class therein described, who shall make a settlement upon public lands of a defined character, and who shall inhabit and improve the same, and who shall erect a dwelling thereon, shall be authorized to enter with the register of the proper land office, by legal subdivisions, one quarter section of said land, to include the residence of the claimant, upon paying the minimum price of such land. Section 11 provides that conflicting claims for pre-emption shall be settled by the register and receiver; section 12, that prior to such entry proof of the settlement and improvement required shall be made to the satisfaction of the register and receiver; and section 13 requires an oath to be made by the claimant before entry; section 15 requires a person settling on land with a view to pre-emption to file within a limited time a statement of his intention and a description of the land. When all these prerequisites are complied with, and the claimant has paid the price of the land, he is entitled to a certificate of entry from the register and receiver, and after a reasonable time, to enable the land officer to ascertain if there are superior claims, and if in other respects the claimant has made out his case, he is entitled to receive a patent, which for the first time invests him with the legal title to the land."

This was reaffirmed in the Yosemite Valley Case, 15 Wall. (82 U. S.) 77, 87, 21 L. Ed. 82; Buxton v. Traver, supra, and in the late case of Banning Co. v. California, 240 U. S. 142, 151, 36 Sup. Ct. 338, 60 L. Ed. 569, where it was again held that such pre-emption conferred no vested right as against the government. The rule would be different, if this were a contest between parties for a preferential right of entry. In such a case the first pre-emptor would have a preferential right over the later applicant. Shipley v. Cowan, 91 U. S. 330, 338, 23 L. Ed. 424; Weyerhaeuser v. Hoyt, 219 U. S. 380, 388, 390, 31 Sup. Ct. 300, 55 L. Ed. 258; Wadkins v. Producers' Oil Co., 227 U. S. 368, 370, 33 Sup. Ct. 380, 57 L. Ed. 551.

[3] As the plaintiff had no vested right against the United States at the time Congress enacted the Act of January 17, 1920, Congress had the power to grant it to the defendant, and, having done so, the courts are powerless to grant the relief asked, although working a great hardship on the plaintiff.

The motion to dismiss is sustained.