## UNITED STATES v. HURLBURT.
### No. 1029.

Circuit Court of Appeals, Tenth Circuit.
July 28, 1934.

Ivor O. Wingren, Asst. U. S. Atty., of Denver, Colo. (Thos. J. Morrissey, U. S. Atty., of Denver, Colo., on the brief), for the United States.

Jean S. Breitenstein, of Denver, Colo., for appellee.

Before PHILLIPS, McDERMOTT, and BRATTON, Circuit Judges.

PHILLIPS, Circuit Judge.

This action was brought by the United States to cancel a patent dated April 14, 1930, conveying a homestead to Hurlburt.

The material facts, as established by the agreed statement of facts and photostat copies of pertinent records of the Land Office, are these: Prior to February 2, 1915, the United States was the owner, as part of its unsurveyed public domain, of the following described land: The W½ of the SE¼ and the SW¼ of Sec. 3, and the E½ of the SE¼ of Sec. 4, Township 6 South, Range 95 West of the 6th P. M., containing 320 acres, Garfield County, State and District of Colorado. Hurlburt, after marking the exterior boundaries of such land, filed a settlement claim on February 2, 1915, in the United States Land Office at Glenwood Springs, Colorado. About July 15, 1915, he established his home thereon, with a view to acquiring title thereto under the homestead laws of the United States when it became open and subject to homestead. He expended about $1500 in improving such land. He cultivated a small portion and used the balance of the land for grazing livestock. On December 6, 1916, the President of the United States issued an executive order which reads in part as follows: "It is hereby ordered that all lands included in the following list shall hereafter constitute Naval Oil Shale Reserve No. 1, Colorado No. 1, and shall be held for the exclusive use or benefit of the United States Navy, until the order is revoked by the President or by Congress." The land in controversy is described in such list.

Subsequently thereto, the land was surveyed and a plat showing such survey was filed in the Land Office on January 7, 1924. Hurlburt filed a homestead application on January 2, 1924, which was accepted and allowed. After the usual field investigation, a recommendation was made that upon submission of final proof the land be clear-listed and passed to patent. Final proof was made on September 12, 1929, and on April 14, 1930, a patent was issued containing the following reservation: "Excepting and reserving, also, to the United States all oil and gas and all shale or other rock valuable as a source of petroleum and nitrogen in the lands so patented, and to it, or persons authorized by it, the right to prospect for, mine and remove such deposits from the same upon compliance with the conditions and subject to the provisions and limitations of the Act of July 17, 1914 (38 Stat. 509 [30 USCA §§ 121-123])."

The trial court found that Hurlburt entered and settled upon such land in 1915 in good faith, and since that time has continuously maintained and perfected such entry and settlement. It concluded as a matter of law that such land was improperly and unlawfully included within the executive order of December 6, 1916.

Under section 3 of article 4 of the Constitution, Congress has the power to dispose of and make all needful rules and regulations, respecting the territory of the United States. Utah Power & L. Co. v. United States, 243 U. S. 389, 37 S. Ct. 387, 61 L. Ed. 791; United States v. Gratiot, 14 Pet. 526, 537, 10 L. Ed. 573; Gibson v. Chouteau, 13 Wall. 92, 20

428

L. Ed. 534; United States v. Hanson (C. C. A. 9) 167 F. 881. On June 25, 1910, Congress passed an act[1] conferring upon the President the power to temporarily withdraw from settlement, location, sale, or entry any of the public lands, for certain specified purposes.

Prior to the passage of such act the President had made numerous withdrawals of public lands, and his power so to do had been confirmed by the courts. United States v. Midwest Oil Co., 236 U. S. 459, 35 S. Ct. 309, 316, 59 L. Ed. 673.

In that case the court said: "Congress, with notice of this practice and of this claim of authority, received the report. Neither at that session nor afterwards did it ever repudiate the action taken or the power claimed. Its silence was acquiescence. Its acquiescence was equivalent to consent to continue the practice until the power was revoked by some subsequent action by Congress."

The Act of June 25, 1910, did not attempt to affirm, repudiate, abridge, or enlarge any withdrawals previously made. Its purpose was to confer specific authority upon the President for the future, subject to the restriction that "there shall be excepted from the force and effect of any withdrawal made under the provisions of this Act all lands which are, on the date of such withdrawal, embraced in any lawful homestead or desert-land entry theretofore made, or upon which any valid settlement has been made and is at said date being maintained and perfected pursuant to law."

The executive order creating the naval oil shale reserve and withdrawing the land from settlement was issued December 6, 1916. It was therefore subject to the exception clause contained in the Act of June 25, 1910, and could not affect a prior valid settlement.

Did Hurlburt make a prior valid settlement that would bring him within the exception clause of that act?

The record shows that prior to December 6, 1916, Hurlburt entered upon the land, marked the exterior boundaries, built a home, and filed a settlement claim with the United States Land Office. It is admitted that he continued to reside thereon and did everything required by law to secure a patent, but it is contended that the land was unsurveyed and not subject to sale, entry, or disposal under the laws of the United States.

One settling upon public domain in advance of public surveys acquires no right, except the preferential right to secure the land after it has been surveyed and offered for settlement. There is nothing in the essential nature of the mere acts of entering upon unsurveyed public land, residing thereon, and improving it with the intention of filing on it as a homestead, that confers upon the settler a vested right or claim to the land, and such acts in no wise impair the power of the government to set aside the land for any public use. Frisbie v. Whitney, 9 Wall. 187, 19 L. Ed. 668; Kansas Pac. R. Co. v. Dunmeyer, 113 U. S. 629, 5 S. Ct. 566, 28 L. Ed. 1122; Buxton v. Traver, 130 U. S. 232, 9 S. Ct. 509, 32 L. Ed. 920; United States v. Hanson (C. C. A. 9) 167 F. 881, 886. See, also, 43 USCA §§ 166, 218 and 223, which deal with preferential rights of settlers on surveyed and unsurveyed public land.

Conceding that Hurlburt's occupation of public land gives him no right against the government, and that Congress had the power to set apart the land in controversy, we come to the inquiry whether Congress, by the reservation contained in the Act of June 25, 1910, withheld from the President power to withdraw Hurlburt's land. The reservation

[1] The Act of June 25, 1910 (36 Stat. 847, §§ 1, 2 [43 USCA §§ 141, 142 and note]), read in part as follows:

"That the President may, at any time in his discretion, temporarily withdraw from settlement, location, sale, or entry any of the public lands of the United States * * * and reserve the same for water-power sites, irrigation, classification of lands, or other public purposes to be specified in the orders of withdrawals, and such withdrawals or reservations shall remain in force until revoked by him or by an Act of Congress.

"Sec. 2 * * * That this Act shall not be construed as a recognition, abridgement, or enlargement of any asserted rights or claims initiated upon any oil or gas bearing lands after any withdrawal of such lands made prior to the passage of this Act: And provided further, That there shall be excepted from the force and effect of any withdrawal made under the provisions of this Act all lands which are, on the date of such withdrawal, embraced in any lawful homestead or desert-land entry theretofore made, or upon which any valid settlement has been made and is at said date being maintained and perfected pursuant to law; but the terms of this proviso shall not continue to apply to any particular tract of land unless the entryman or settler shall continue to comply with the law under which the entry or settlement was made."

in the act contemplates that there might be a valid settlement upon public lands, other than those which are embraced in legal entries or covered by lawful filings, as those terms are used in the public land laws. The courts have held also that a valid settlement could be made upon unsurveyed public land.[2]

We conclude that Hurlburt made a valid settlement within the meaning of the reservation clause of the act of June 25, 1910.

Furthermore the land was withdrawn as a naval oil shale reserve. Under the Act of July 17, 1914 (38 Stat. 510, § 3 [30 USCA § 123]) such lands are subject to settlement, and a patent may be issued with a reservation of the mineral rights in the United States.[3]

The record clearly shows that the Land Office in receiving the application and issuing the patent, considered itself bound by such act.

The judgment is affirmed.

---

[2] In Holmes v. United States (C. C. A. 9) 118 F. 995, 999. the court said:

"Does the settler upon unsurveyed land, who makes it his home with the intention, as soon as the land is surveyed, to take the necessary steps to secure and protect his entry as a homestead, and to acquire title under the homestead law, and who makes valuable and permanent improvements on the land, make a 'valid settlement pursuant to law'?

"In Clements v. Warner, 24 How. 394–397, 16 L. Ed. 695, it was said:

" 'The law deals tenderly with one who in good faith goes upon the public lands with a view of making a home thereon.'

"In Buxton v. Traver, 130 U. S. 232, 9 S. Ct. 509, 32 L. Ed. 920, it was said:

" 'A settlement upon the public lands in advance of the public surveys is allowed to parties who in good faith intend, when the surveys are made and returned to the local land office, to apply for their purchase.'

"In Washington & I. Railroad Co. v. Osborn, 160 U. S. 103, 16 S. Ct. 219, 40 L. Ed. 356, it was held that a settler upon public unsurveyed land, who had made improvements thereon with the intention of acquiring a title under the pre-emption laws as soon as the lands should be surveyed, had a 'possessory claim,' such as was protected by the act of congress in granting to a railroad company a right of way over the public lands, and conferring upon a territorial legislature power to 'provide for the manner in which private lands and possessory claims on the lands of the United States may be condemned.'

* * *

"It is true, there is no statutory provision which in express terms permits or protects settlement upon unsurveyed public land. We think, however, in view of the foregoing expressions of the supreme court, and the known recognition of the rights of such settlers as against all except the United States, that such a settlement, while it confers no right which the government is bound to respect, is nevertheless a valid settlement, and made pursuant to law, and that it comes within the spirit and intent of the exception contained in the proclamation of the president."

See also Lytle v. State of Arkansas, 9 How. 314, 333, 334, 13 L. Ed. 153; Stockley v. United States, 260 U. S. 532, 43 S. Ct. 186, 67 L. Ed. 390.

[3] 30 USCA § 123 (38 Stat. 510, § 3) reads as follows: "Any person who has, in good faith, located, selected, entered, or purchased, or any person who shall locate, select, enter, or purchase, after July 17, 1914, under the nonmineral land laws of the United States, any lands which are subsequently withdrawn, classified, or reported as being valuable for phosphate, nitrate, potash, oil, gas, or asphaltic minerals, may, upon application therefor, and making satisfactory proof of compliance with the laws under which such lands are claimed, receive a patent therefor, which patent shall contain a reservation to the United States of all deposits on account of which the lands were withdrawn, classified, or reported as being valuable, together with the right to prospect for, mine, and remove the same."