## GONZALES *v.* FRENCH.

APPEAL FROM THE SUPREME COURT OF THE TERRITORY OF
ARIZONA.

No. 34.   Argued and submitted April 27, 28, 1896. — Decided November 30, 1896.

As the claim of the plaintiff in error, claiming under an alleged preëmption, was passed upon by the proper officers of the land department, originally and on appeal, and as the result of the contest was the granting of a patent to the contestant, in order to maintain her title she must show either that the land department erred in the construction of the law applicable to the case, or that fraud was practised upon its officers, or that they themselves were chargeable with fraudulent practices, which she has failed to do.

The claim of the plaintiff in error to a right of preëmption is fatally defective because her vendors and predecessors in title had failed to make or file an actual entry in the proper land office.

EMMA J. Gonzales, in October, 1891, filed a bill of complaint in the District Court of the Fourth Judicial District of the Territory of Arizona, against E. W. French, probate judge of the county of Yavapai and Territory of Arizona, and former trustee of the inhabitants of the town of Flagstaff, of the county of Coconino, and J. E. Jones, probate judge of said county of Coconino, and the successor as trustee of the inhabitants of the said town of Flagstaff, and therein alleged that she was the equitable owner of a certain tract of land containing 120 acres, and forming part of section 16, T. 21 N., R. 7 E. of the Gila and Salt River meridian. The facts, as alleged by her, were substantially these: Prior to the survey of said township, Thomas F. McMillan, Frank Christie and Conrad Farriner, who were citizens of the United States, over the age of twenty-one years, and qualified preëmptors, while prospecting for a home upon the public lands of the United States subject to preëmption, or that might so become when the same should be surveyed, settled on this land, intending to claim the same as preëmptors, and were on said land at the date of survey in 1878 ; that they had built dwelling

houses thereon and reduced portions of it to cultivation prior
to such survey ; that they continued to improve and claim the
same until in June, 1883, when the plaintiff bought from the
said occupants all their improvements and took possession
thereof ; that she afterwards, and while living on the land
she now claims, built a dwelling house thereon and made
other improvements, prior to April 2, 1885, of the value of
$3000 ; that, on said date, she made formal application to the
register and receiver of the United States Land Office at
Prescott, Arizona, to be allowed to file a preëmption declara-
tory statement for the land, and to enter the same, tendering
to said officers the proper price therefor, said application
being made before any adverse claimant was known, but her
application was rejected on the ground that the land was re-
served for schools ; that on February 3, 1889, Congress passed
an act for the relief of the inhabitants of Flagstaff, Arizona,
the tract involved in this suit being embraced in the half sec-
tion mentioned in said act, by which it was provided that the
probate judge of Yavapai County might enter the south half
of section sixteen, township twenty-one north, range seven
east, in trust for the occupants and inhabitants of Flagstaff.
The bill further alleged that the tracts settled on at the date
of the survey were excepted by section 2275 of the Revised
Statutes of the United States from the reservation of the six-
teenth and thirty-sixth sections in each township for school
purposes, but that, if not so excepted, the land claimed by her
was released from any such reservation by said act of Febru-
ary 13, 1889, and became subject to her settlement claim ; that
the said French, probate judge, had been permitted, on Janu-
ary 17, 1889, to make townsite declaratory statement for the
benefit of the inhabitants of Flagstaff for said half section ;
that she, the plaintiff, contested the right of the said French
to make townsite entry, and prosecuted her protest by succes-
sive appeals to the Commissioner of the General Land Office
and the Secretary of the Interior, but that a patent of the
United States was issued to said French on said entry for said
land ; that at the time she purchased said improvements and
settled on the land, the town of Flagstaff was unorganized

and unknown, and none of the inhabitants were then settled on said land or claiming any part of it; and that on the organization of Coconino County the land in suit became a part thereof, and the defendant Jones became probate judge of the new county and the successor to French in the trust.   The plaintiff asked a decree declaring that the settlement and occupancy of said land, at the date of survey, by qualified preëmptors, excluded the same from the reservation for school purposes; that, by reason of defendant's purchase of the improvements and her own occupancy and improvements, a right of entry attached thereto in her; that the refusal of the local officers to allow her filing in 1885 was unlawful; that the act of February 13, 1889, did not take away any of her rights, but, if anything, released any claim the Territory of Arizona might have to the land, and that, under the townsite laws referred to in said act, her rights as a settler were and are superior to those of the inhabitants of Flagstaff, as to the particular part of the section covered by her claim ; and that the said patentee, as trustee for the said inhabitants, in so far as the land claimed by the plaintiff is embraced in said patent, should be decreed to be the trustee of the plaintiff, and be required to deliver a deed for the same to the plaintiff.

The defendant demurred to the complaint on the general ground that it failed to state facts sufficient to constitute a cause of action.   This demurrer was sustained by the District Court.   The plaintiff elected to stand on her complaint, and a final decree was entered dismissing the bill.   The plaintiff thereupon appealed to the Supreme Court of the Territory, where the judgment below was affirmed, from which decree an appeal was taken and allowed to this court.

*Mr. S. D. Luckett* for appellant.   *Mr. Henry N. Copp* was on his brief.

*Mr. Edward M. Doe* for appellees submitted on his brief.

MR. JUSTICE SHIRAS, after stating the case, delivered the opinion of the court.

Section 1946 of the Revised Statutes enacted that sections numbered sixteen and thirty-six in each township of the Territories of New Mexico, Utah, Colorado, Dakota, *Arizona*, Idaho, Montana and Wyoming should be reserved for the purpose of being applied to schools in the several Territories named, and in the States and Territories thereafter to be erected out of the same. Section 2275 is as follows: "Where settlements with a view to preëmption have been made before the survey of the lands in the field, which are found to have been made on section sixteen or thirty-six, those sections shall be subject to the preëmption claim of such settler; and if they, or either of them, have been or shall be reserved or pledged for the use of schools or colleges in the State or Territory in which the lands lie, other lands of like quantity are appropriated in lieu of such as may be patented by pre-emptors. . . ."

In 1878 a survey in the field was made of the township in which the lands in dispute were situated, which survey, together with a plat of the same, was approved February 3, 1879. At the time of the survey McMillan and Farriner were residing on and cultivating lands constituting a portion of section sixteen, and in 1883 Emma J. Gonzales, the plaintiff in error, purchased from said occupants their improvements, took possession of the land, and erected additional improvements thereon.

February 13, 1889, 25 Stat. 668, c. 150, Congress enacted the following law:

"A bill for the relief of the occupants of the town of Flag-staff, county of Yavapai, Territory of Arizona.

"*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled*, That the probate judge of Yavapai County, Territory of Arizona, be, and he is hereby, authorized to enter, in trust for the occupants and inhabitants of Flagstaff for townsite purposes, the south half of section sixteen, township twenty-one north, range seven east, Gila and Salt River meridian, in the Territory of Arizona, subject to the provisions of sections twenty-three hundred and eighty-seven, twenty-three hundred and

eighty-eight and twenty-three hundred and eighty-nine of chapter eight of the Revised Statutes of the United States relating to townsites.

"Sec. 2. That upon the passage of this act the Territory of Arizona, through its proper officers, shall be, and hereby is, authorized to select as indemnity to said land, and in full satisfaction thereof and for the purpose stated in section nineteen hundred and forty-six, one half section of public lands at any office in said Territory, said selections to be made according to legal subdivisions."

On January 17, 1889, E. W. French, as probate judge of said county, in trust for the inhabitants of the town of Flagstaff, filed a declaratory statement for the entry of said south half of said section sixteen, and on July 29, 1889, the plaintiff in error appeared before the local land officers and filed a protest against the allowance of said entry by the said probate judge. At the hearing before said local land officers the land was awarded to the said probate judge in trust for the inhabitants of Flagstaff, and the plaintiff appealed successively to the Commissioner of the General Land Office and to the Secretary of the Interior, by both of whom her right of entry was denied; the land was awarded to said probate judge, and subsequently a patent was issued to him in trust for the occupants and inhabitants of the said town of Flagstaff.

As the claim of the plaintiff in error to the land in question was passed upon by the proper local officers of the land department, and subsequently, upon appeal, by the Commissioner of the General Land Office, and, upon a further appeal, by the Secretary of the Interior, and as the result of the contest was the granting of a patent to the probate judge of the county of Yavapai as trustee of the inhabitants of the town of Flagstaff, the plaintiff, to maintain her bill, must aver and prove either that the land department erred in the construction of the law applicable to the case, or that fraud was practised upon its officers, or that they themselves were chargeable with fraudulent practices. *Johnson* v. *Towsley*, 13 Wall. 72; *Moore* v. *Robbins*, 96 U. S. 530; *Steel* v. *Smelting Co.*, 106 U. S. 447.

Recognizing this well-settled rule, the plaintiff contends that the land department and the Supreme Court of Arizona erred in failing to find, as matter of law, that the conceded settlement of McMillan and Farriner on the land in question, prior to the survey in the field, and their occupancy of the same with the intention of claiming said land under the preëmption law, excluded said land from the reservation for school purposes. In other words, the contention is that mere settlement and cultivation upon any portion of sections sixteen and thirty-six before the same shall be surveyed exclude such portion from the school grant, and *Sherman* v. *Buick*, 93 U. S. 209, and *Mining Co.* v. *Consolidated Mining Co.*, 102 U. S. 167, are cited to that effect.

But those were cases decided under the act of March 3, 1853, c. 145, 10 Stat. 244, under which the right of the State of California to school lands arose, and it was held that, by the express terms of the seventh section of that act, where there was either a dwelling house or the cultivation of any portion of the land, on which some one was residing and was asserting claim to it, the title of the State did not vest, but the alternative right to other land as indemnity did.

The language of the seventh section of that act, "Where any settlement, by the erection of a dwelling house or the cultivation of any portion of the land, shall be made upon the sixteenth and thirty-sixth sections before the same shall be surveyed, . . . other land shall be selected by the authorities of the State in lieu thereof," is widely different from that of section 2275; "Where settlements, with a view to preëmption, have been made before the survey of the lands in the field, which are found to have been made on sections sixteen and thirty-six, those sections shall be subject to the preëmption claim of such settler, and . . . other lands of like quantity are appropriated in lieu of such as may be patented by preëmptors." And Mr. Justice Miller, in delivering the opinion of the court in *Mining Co.* v. *Consolidated Mining Co.*, 102 U. S. 175, was careful to say that "the qualifying incidents," prescribed in the act of 1853, "are not the same required under the general preëmption law," but

are intended "to convey the idea of a settlement and a settler according to the terms of the statute under consideration."

The claim of the plaintiff in error, therefore, to a right of preëmption was fatally defective because her vendors and predecessors in title had failed to make or file an actual entry in the proper land office. As they did not choose to assert their rights by filing a declaratory statement, or by making an entry as preëmptioners, their mere possession did not prevent the rights of the Territory from attaching to the school sections when the survey was made. Nor did the plaintiff in error lawfully succeed to any possessory rights they may have had, as against the United States, because such rights were merely personal to the settler, and, under § 2263, Rev. Stat., were not assignable to the plaintiff in error. She did not herself, after taking possession, comply with the requisitions of the law.

Section 2265, Revised Statutes, provides that "every claimant under the preëmption law for land not yet proclaimed for sale is required to make known his claim in writing to the register of the proper land office within three months from the time of the settlement, giving the designation of the tract and the time of settlement; otherwise his claim shall be forfeited and the tract awarded to the next settler, in the order of time, on the same tract of land, who has given such notice and otherwise complied with the conditions of the law": and section 2266 provides that "in regard to settlements which are authorized upon unsurveyed lands, the preëmption claimant shall be in all cases required to file his declaratory statement within three months from the date of the receipt at the district land office of the approved plat of the township embracing such preëmption settlement"; and section 2267 provides that "all claimants of preëmption rights, under the two preceding sections, shall, when no shorter time is prescribed by law, make the proper proof and payment for the lands claimed within thirty months after the date prescribed therein, respectively, for filing their declaratory notice, has expired."

The bill discloses that the plaintiff in error first appeared in the land office and proposed to file her declaratory state-

ment on April 2, 1885, more than six years after the filing of the plat.

The register and receiver were, therefore, warranted in rejecting the claim of the plaintiff in error. And, at any rate, as she did not appeal from their decision to the Commissioner of the General Land ·Office, she must be deemed to have acquiesced therein, and is concluded thereby so long as it remains unreversed. *Wilcox* v. *Jackson*, 13 Pet. 498, 511.

The plaintiff in error took no further steps until July 20, 1889, when, as already stated, she ineffectually opposed the claim of the probate judge in making his entry under the provisions of the act of February 13, 1889. The present bill was not filed until October 2, 1891, and in the meantime, as appears by one of the pleas, the truth of which was admitted by demurrer, the probate judge had, as trustee under the act, conveyed many and large portions of the lands in controversy to numerous inhabitants of the town of Flagstaff.

The Supreme Court of the Territory held that the land in question was never divested of its character as school land until the entry by the probate judge under the act of 1889, and accordingly sustained the action of the trial court in dismissing the plaintiff's complaint, and in this we see no error.

Whatever might have been the possessory rights of the plaintiff in error as against other claimants under the ordinary land laws, such rights could not avail against the right. of Congress to confer said lands upon other parties. *Frisbie* v. *Whitney*, 9 Wall. 187; *Yosemite Valley case*, 15. Wall. 77; *Shepley* v. *Cowan*, 91 U. S. 330. We cannot accede to the argument on behalf of the plaintiff in. error that. the legal effect of the act of February 13, 1889, was to leave the land described therein open to controversy between townsite settlers and persons who might have settled on the lands but had not complied with the requisites of the preëmption laws.

As was said in *Shepley* v. *Cowan*, *supra*, "In those cases, *Frisbie* v. *Whitney* and the *Yosemite Valley case*, the court decided that a party, by mere settlement upon the public lands, with an intention to obtain a title to the same under the preëmption laws, did not thereby acquire such a vested

interest in the premises as to deprive Congress of the power to dispose of the property; that, notwithstanding the settlement, Congress could reserve the lands for sale whenever they might be needed for public uses, as for arsenals, fortifications, light houses, custom houses and other public purposes for which real property is required by the government; that the settlement, even when accompanied with an improvement of the property, did not confer upon the settler any right in the land as against the United States, or impair in any respect the power of Congress to dispose of the land in any way it might deem proper; that the power of regulation and disposition conferred upon Congress by the Constitution only ceased when all the preliminary acts prescribed by law for the acquisition of the title, including the payment of the price of the land, had been performed by the settler. When these prerequisites were complied with, the settler for the first time acquired a vested right in the premises of which he could not be subsequently deprived. He was then entitled to a certificate of entry from the local land officers, and ultimately to a patent of the United States. Until such payment and entry, the acts of Congress gave to the settler only a privilege of preëmption in case the lands were offered for sale in the usual manner; that is, the privilege to purchase them in that event in preference to others."

In *Buxton* v. *Traver*, 130 U. S. 232, this language was used: " A settlement upon the public lands in advance of the public surveys is allowed to parties who in good faith intend, when the surveys are made and returned to the local land office, to apply for their purchase. If, within a specified time after the surveys, and the return of the township plat, the settler takes certain steps, that is, files a declaratory statement, . . . and performs certain other acts prescribed by law, he acquires for the first time a right of preëmption to the land. . . . If those steps are from any cause not taken, the proffer of the government has not been accepted, and a title in the occupant is not even initiated."

Proper effect would not be given, as we think, to the act of February 13, 1889, by subjecting the patentee and his

grantees to the claims of persons who have no vested rights under the preëmption laws. Such claims would, in the present case, oust the townsite settlers from large portions of the grant, and defeat the manifest purpose of Congress.

The judgment of the Supreme Court of the Territory of Arizona is

*Affirmed.*