# RIO GRANDE WESTERN RAILWAY COMPANY v. STRINGHAM et al.

### No. 2098.   Decided August 30, 1910 (110 Pac. 868).

1. PUBLIC LANDS—FAILURE TO COMPLY WITH PRE-EMPTION LAWS—EFFECT. Where a person had occupied public lands, but failed to file within three months after the land was surveyed his declaratory statement as required by the pre-emption laws, he acquired no right or title, and the land became subject to disposition by the United States as before its occupancy. (Page 118.)

2. PUBLIC LANDS—STATUTE—TO WHOM IT APPLIES. Under Act Cong. March 3, 1875, c. 152, 18 Stat. 482 (U. S. Comp. St. 1901, p. 1568), providing that railroad companies may obtain the right of way over the public lands on filing articles of incorporation, maps, etc., with the Secretary of the Interior within a specified time, a railroad company having built a road prior to the act may also take advantage of it. (Page 120.)

3. PUBLIC LANDS—RULINGS OF SECRETARY OF INTERIOR—CONCLUSIVENESS. A ruling by the Secretary of the Interior that Act Cong. March 3, 1875, c. 152, 18 Stat. 482 (U. S. Comp. St. 1901, p. 1568), providing for the granting of rights of way over the public lands to railroad companies on certain conditions may be taken advantage of by a company which had constructed its road prior to such enactment, cannot be reviewed in a suit by such a company to quiet its title. (Page 120.)

38 Utah—8

4. Public Lands—Secretary of Interior—Ruling on Statute—
Effect. Where a railroad company which had constructed its
road over public land prior to Act Cong. March 3, 1875, c. 152,
18 Stat. 482 (U. S. Comp. St. 1901, p. 1568), providing that rail-
road companies could obtain the right of way over the public
lands on filing their articles of incorporation, maps, etc., with
the Secretary of the Interior within a specified time, filed its
articles of incorporation, maps, etc., after the passage of the act,
their approval by the Secretary of the Interior determined that
the act applied also to companies having constructed roads
prior to the act.   (Page 120.)

5. Evidence—Secretary of the Interior—Performance of Duty—
Presumption. Where, in a suit to quiet title to a railroad right
of way, it appeared that the Secretary of the Interior had ap-
proved the articles of incorporation, maps, etc., of plaintiff com-
pany filed according to Act Cong. March 3, 1875, c. 152, 18 Stat.
482 (U. S. Comp. St. 1901, p. 1568), providing that such filing
should be a prerequisite to obtain a right of way over the public
lands, the appellate court will presume on appeal that such
approval was duly noted upon the plats as the act required, in
the absence of a showing to the contrary.   (Page 121.)

6. Public Lands—Patent—Prior Grant—Presumptions. In the
absence of a showing to the contrary, it will be presumed on
appeal that a patent to public lands was issued subject to a
railroad right of way which had been granted over the land.
(Page 121.)

7. Public Lands—Prior Grant of Right of Way—Effect of Sub-
sequent Grant. On approval by the Secretary of the Interior
of the profile of a proposed railroad through public lands in
accordance with Act Cong. March 3, 1875, c. 152, 18 Stat. 482 (U.
S. Comp. St. 1901, p. 1568), the title to the right of way vested
in the railroad company, and a subsequent patent of land in-
cluding the right of way, though not made subject thereto, did
not divest the title so acquired.[1]   (Page 121.)

Appeal from District Court, Third District; *Hon. C. W.
Morse,* Judge.

Action to quiet title by the Rio Grande Western Railway
Company against Thomas B. Stringham and others.

Judgment for defendant.  Plaintiff appeals.

---

[1] Lewis v. R. G. W. Ry. Co., 17 Utah, 504, 54 Pac. 981.

REVERSED AND REMANDED, WITH DIRECTIONS.

*Van Cott, Allison & Riter* for appellant.

*A. A. Duncan* and *N. W. Sonnedecker* for respondents.

STRAUP, C. J.

This is an an action to quiet title to a strip of land two-hundred feet in width extending through two quarter sections. The defendants denied plaintiff's ownership and right of possession, and alleged ownership and possession in themselves.

The material facts found by the court are: In September, 1872, the Bingham Canyon & Camp Floyd Railroad Company, a corporation, was organized to construct and operate a steam railroad from Sandy, Salt Lake County, to Lewiston, Tooele County, a distance of thirty-five miles. In 1873 the road was built from Sandy to Bingham, a distance of sixteen and thirteen-hundredths miles, and ever since has been maintained and operated between those points. The road was not constructed beyond Bingham. For the purposes of availing itself of the benefits of an act of Congress entitled "An act granting to railroads the right of way through the public lands of the United States," approved March 3, 1875, c. 152, 18 Stat. 482 (U. S. Comp. St. 1901, p. 1568), the Bingham Canyon & Camp Floyd Railroad Company in September, 1875, "filed with the Secretary of the Interior a copy of its articles of incorporation and due proof of its organization under the same, which were accepted, received, and approved by him on the 20th day of September, 1875; and in the year 1876 it filed with the register of the United States Land Office at Salt Lake City, Utah, the district where the lands over which its road was built were located, a profile and map of its road as then built between Sandy and the town of Bingham, which profile and map showed that the railroad was built by the end of 1873, and showed the line of route of said railroad to be over and across the premises in question, and that such

profile and map were approved by the Secretary of the Interior on the 30th day of October, 1876." In 1870 Dorr P. Curtis and George Stringham settled upon unsurveyed public lands of the United States, including the strip in dispute, with the intention of thereafter acquiring them as agricultural lands under the pre-emption laws of the United States. Curtis built a house and a barn, and Stringham a cabin and barn and fences, on the lands settled upon by them. Curtis continued to reside on his lands until 1875, when he sold his possessory rights and surrendered possession to Stringham. In May, 1873, these lands were surveyed under the authority of the United States. The survey was approved by the Surveyor General in May, 1874, and on the 1st day of August, 1874, a certified copy of the township plat of the survey of the premises was filed in the United States Land Office at Salt Lake City. No declaratory statement perfecting his pre-emption right was filed by Curtis. No declaratory statement was filed by Stringham until the 12th day of June, 1883. On the 4th day of August, 1883, Nicholas Treweek and others located a placer mining claim on a portion of the ground settled upon by Stringham and Curtis. Upon an application made by Treweek for patent survey, a dispute arose between Stringham and Treweek involving conflicting rights of possession. They thereupon on the 11th day of May, 1886, entered into a written agreement, by the terms of which they agreed that Treweek should proceed with his application for patent, and, when the patent was obtained by him, he should convey to Stringham a certain portion of the surface grounds of the claim, including the strip of ground here in dispute. On the same day and pursuant to the agreement, Stringham canceled and released his filing and entry theretofore made by him in the land office. Treweek obtained his patent in June, 1889, and in September of that year he conveyed to Stringham the surface ground of a portion of the claim in accordance with the agreement. In June, 1906, Stringham conveyed to Mary J. Stringham. The plaintiff, just when is not found, by deeds of conveyance acquired from the Bingham Canyon and Camp Floyd Railroad Company all its right,

title, and interest in and to the railroad, including its right of way and the lands in dispute. Both by the pleadings and findings it is made to appear that plaintiff's predecessor, by deeds of conveyance from Curtis and Stringham, acquired a right of way to a portion of the strip of ground in dispute, twelve and one-half feet on each side of the center of the railroad track. Upon these findings the trial court held: "That the said act of Congress, approved March 3, 1875, applies only to railroads which may thereafter be built, and does not apply to railroads already built and in operation at the time of its passage, and therefore the Bingham Canyon & Camp Floyd Railroad Company acquired no right, title, or interest in and to the premises in question under that act, or under the various proceedings taken by it in order to acquire the benefits which it confers. That the Bingham Canyon & Camp Floyd Railroad Company acquired no right, title, or interest in or to the premises in question under the said act of Congress approved July 26, 1866." The court further held that the title acquired by Treweek was the first title acquired to the premises in question from the United States, and that by virtue of the deed of conveyance from him to George Stringham, and from George Stringham to Mary J. Stringham, she was the rightful owner of the ground in dispute, except the twelve and one-half feet on each side of the center of the track. Judgment was thereupon entered dismissing plaintiff's complaint for want of equity except as to the twelve and one-half feet. From this judgment the plaintiff has prosecuted this appeal on the judgment roll without a bill of exceptions.

It is contended that the decisive questions on the appeal are: (1) Were the lands in question, and upon and across which plaintiff's predecessor constructed its road, public lands when it filed its articles of incorporation with the Secretary of the Interior, and its profile and map with the register of the district land office, and undertook to avail itself of the benefits of the act? (2) Does the act of Congress approved March 3, 1875, apply only to railroads constructed and operated after the act was passed, or does it also apply to rail-

roads which were constructed and in operation before the act was passed? When the respondents' predecessors, Dorr P. Curtis and George Stringham, settled upon the lands in 1870, the lands were unsurveyed public lands. Under the pre-emption laws of the United States then in force, pre-emption claimants were required to file declaratory statements within three months from the date of the receipt at the district land office of the approved plat of the township embracing such pre-emption settlements. The lands settled upon by these claimants were surveyed in May, 1873. The survey was approved in May, 1874. The township plat of the survey was filed in the district land office on the 1st day of August, 1874. Curtis filed no declaratory statement, and made no entry in the land office. He sold his possessory rights to George Stringham in 1875. Stringham filed no declaratory statement, and made no entry in the land office until the 12th day of June, 1883. These claimants failing to assert their rights by the filing of a declaratory statement, or by making an entry as pre-emptors, within the prescribed time after the receipt at the district land office of the township plat, acquired no prior rights by virtue of their settlement and occupancy, and their failure to file such declaratory statements left the lands subject to disposition by the United States as before their occupancy.

The Supreme Court of the United States, in the case of *Buxton v. Traver*, 130 U. S. 232, 9 Sup. Ct. 509, 32 L. Ed. 920, held that a settlement upon public lands in advance of a public survey is allowed to parties who, in good faith, intend, when the surveys are made and returned to the local land office, to apply for their purchase; and, when the public surveys are made and returned, the land, not having been in the meantime withdrawn, can be acquired and purchased by them by the filing of a declaratory statement within the time and by pursuing the steps prescribed by law. The court there said: "If those steps are from any cause not taken, the proffer of the government has not been accepted, and a title in the occupant is not even initiated. The title to the land remains unaffected, and subject to the control and dis-

position of the government, as before his occupancy. This doctrine has been long established in this court." To the same effect are *Northern Pac. Ry. Co. v. De Lacey,* 174 U. S. 622, 19 Sup. Ct. 791, 43 L. Ed. 1111; *Gonzales v. French,* 164 U: S. 338, 17 Sup. Ct. 102, 41 L. Ed. 548; *Osborne v. Altschul* (C. C.), 101 Fed. 739. We therefore say that the lands in question were public lands when plaintiff's predecessor, in 1875, filed its articles of incorporation with the Secretary of the Interior, and when the profile and map of its road were filed by it in the district land office, and approved by the Secretary of the Interior on the 20th day of October, 1876.

Now, as to the other question, was plaintiff's predecessor entitled to avail itself of the benefits of the act of 1875, it being shown that its railroad was built and completed in 1873 for a distance of only sixteen and thirteen-hundredths miles? The act, so far as material, is as follows:

"Section 1. That the right of way through the public lands of the . United States is hereby granted to any railroad company duly organized under the laws of any state or territory, except the District of Columbia, or by the Congress of the United States, which shall have filed with the Secretary of the Interior a copy of its articles of incorporation, and due proofs of its organization under the same, to the extent of one hundred feet on each side of the central line of said road; also the right to take, from the public lands adjacent to the line of said road, material, earth, stone, and timber necessary for the construction of said railroad; also ground adjacent to such right of way for station-buildings, depots, machine shops, side-tracks, turn-outs, and water-stations, not to exceed in amount twenty acres for each station, to the extent of one station for each ten miles of its road. . . .

"Sec. 2. That any railroad company desiring to secure the benefits of this act, shall, within twelve months after the location of any section of twenty miles of its road, if the same be upon surveyed lands, and, if upon unsurveyed lands, within twelve months after the survey thereof by the United States, file with the register of the land office for the district where such land is located a profile of its road; and upon approval thereof by the Secretary of the Interior the same shall be noted upon the plats in said office; and thereafter all such lands over which such right of way shall pass shall be disposed of subject to such right of way: Provided, that if any section of said road shall not be completed within five years

after the location of said section, the rights herein granted shall be forfeited as to any such uncompleted section of said road." 18 Stat. 482, 483; 6 Fed. Stat. Ann. 501, 506.

We think that the Secretary of the Interior, when he received and accepted the articles of incorporation of plaintiff's predecessor, and approved the profile of its road filed with the register of the district land office, determined the question now under consideration. By such acceptance and approval, the Secretary necessarily determined that the act did apply. This is not a proper proceeding nor forum to review that ruling.

The Supreme Court of the United States in the case of *Noble v. Union River Logging R. R.,* 147 U. S. 165, 13 Sup. Ct. 271, 37 L. Ed. 123, said:

"At the time the documents required by the act of 1875 were laid before Mr. Vilas, then Secretary of the Interior, it became his duty to examine them, and to determine, amongst other things, whether the railroad authorized by the articles of incorporation was such a one as was contemplated by the act of Congress. Upon being satisfied of this fact, and that all the other requirements of the act had been observed, he was authorized to approve the profile of the road, and to cause such approval to be noted upon the plats in the land office for the district where such land was located. When this was done, the granting section of the act became operative, and vested in the railroad company a right of way through the public lands to the extent of one hundred feet on each side of the central line of the road. (*Frasher v. O'Connor,* 115 U. S. 102 [5 Sup. Ct. 1141, 29 L. Ed. 211.]) . . . The lands over which the right of way was granted were public lands subject to the operation of the statute, and the question whether the plaintiff was entitled to the benefit of the grant was one which it was competent for the Secretary of the Interior to decide, and when decided, and his approval was noted upon the plats, the first section of the act vested the right of way in the railroad company."

To the same effect is also the case of *Minneapolis, etc., Ry. Co. v. Doughty,* 208 U. S. 251, 28 Sup. Ct. 291, 52 L. Ed. 474. When, therefore, the secretary approved the profile of the road, such approval operated as a conveyance of title to the right of way through the public lands to the extent of one hundred feet on each side of the center of the road. *Lewis v. R. G. W. Ry. Co.,* 17

Utah 504, 54 Pac. 981; *Phoenix, etc., Ry. Co. v. Arizona, etc., Ry. Co.,* 9 Ariz. 434, 84 Pac. 1097; *O. S. L. Ry. Co. v. Stalker,* 14 Idaho 362, 94 Pac. 56; *Red River, etc., Co. v. Sture,* 32 Minn. 95, 20 N. W. 229; *Jamestown & Northern R. Co. v. Jones,* 177 U. S. 125, 20 Sup. Ct. 568, 44 L. Ed. 698.

It is not found whether the approval of the Secretary was noted upon the plats as required by section 4 of the act, but, in the absence of a showing to the contrary, it will be presumed that the Secretary, upon his approval of the profile of the road, did what the law required him to do, and that such notation was made accordingly; and it has been held that, even though such notation was not made, such failure did not prejudice the rights of a railroad company having filed a profile of its road, for its title was complete when such profile was approved by the Secretary. (*O. S. L. Ry. Co. v. Stalker, supra.*) Nor is it made to appear whether the mineral patent issued to Treweek in 1889 was in terms made subject to the right of way, but since section 4 of the act provides that "all such lands over which such right of way shall pass shall be disposed of subject to such right of way," it again will be presumed, in the absence of a showing to the contrary, that the subsequent disposition made to Treweek was subject to the right of way, and in any event, since the title to the right of way vested in plaintiff's predecessor upon the Secretary's approval of the profile of its road, it matters not whether the subsequent grant to Treweek was or was not in terms made subject thereto, for the law itself made it so. *Railroad Co. v. Baldwin,* 103 U. S. 426, 26 L. Ed. 578; *Northern Pac. Ry. Co. v. Townsend,* 190 U. S. 267, 23 Sup. Ct. 671, 47 L. Ed. 1044. Therefore the title which the respondents obtained from Treweek was subordinate to that of appellants.

We think upon the findings the plaintiff should prevail. The judgment of the court below is therefore reversed, and the cause remanded to the district court, with directions to vacate its conclusions and judgment heretofore made and

entered, and to make conclusions and render and enter a judgment awarding to the plaintiff title to a right of way over the lands in question one hundred feet wide on each side of the center of the track. Costs to appellant.

FRICK and McCARTY, JJ., concur.