76

296 P.2d 975

Rennold PENDER, Plaintiff and Appellant,

v.

BOARD OF EDUCATION OF SALT LAKE CITY, a Public Corporation, et al., Defendants and Respondents.

No. 8469.

Supreme Court of Utah.

May 8, 1956.

R. S. Johnson, Salt Lake City, for appellant.

Romney & Boyer, Salt Lake City, E. R. pellant.

Marr, Wilkins & Cannon, Richard H. Nebeker, Frank E. Moss, County Atty., Callister, Jr., Atty. Gen., for respondent.

McDONOUGH, Chief Justice.

Rennold Pender filed an application with the United States Bureau of Land Management to purchase lot 4, block 13, section 16, T. 1 S., R. 1 E., S.L.M., Utah, under claim of color of title. The application was rejected in a letter from the Bureau stating that the State of Utah apparently had paramount title to the land, having received it under the Act of July 16, 1894, 28 Stat. 107, for school purposes, and until that conflicting claim was eliminated, Pender's application could not be considered favorably. Pender then filed a quiet title suit, naming Romney Lumber Company, who purchased from the State in 1943, and County of Salt Lake as defendants. Salt Lake County filed a disclaimer and the Board of Education of Salt Lake City was substituted for Romney Lumber Company. The trial court entered judgment in favor of the Board of Education and dismissed the plaintiff's complaint upon a motion for summary judgment.

The appellant, Rennold Pender, complains that there were factual matters in dispute which should have been heard by the court before it entered its judgment; but those factual matters, all of which concern defects in his chain of title, are conceded in appellant's favor for the purposes of the summary judgment and this appeal. Therefore, the only question before us is whether the trial court correctly applied the law in ruling upon the facts before it.

Appellant claims title to the property as a successor in interest of an early settler who never received a patent from the United States but who, he claims, was in possession of the property intending to obtain a patent through pre-emption at the time when the first U. S. survey was made, determining the location of sections 16 and 36 which were reserved for the purpose of schools in the territory and state to follow. See U.C.A.1953, Vol. 1, p. 80, "An Act to Establish A Territorial Government for Utah", passed September 9, 1850. For the purpose of the motion for summary judgment, respondent concedes that D. Hendrix was a settler with a view to pre-emption who inhabited and improved the tract involved in 1855. In 1856, the official survey of the area was filed and accepted and at that time the location of the boundary lines of section 16 became known.

To protect the security and work product of the pre-emption settlers, Congress passed a provision concerning pre-emptive rights on school lands in 1859:

"Where settlements, with a view to preemption, have been made before the survey of the lands in the field which shall be found to have been made on sections sixteen or thirty-six, said sections shall be subject to the preemption claim of such settler; and if they, or either of them, shall have been or shall

be reserved or pledged for the use of schools or colleges in the State or Territory in which the lands lie, other lands of like quantity are hereby appropriated in lieu of such as may be patented by preemptors * * *." 26 Feb. 1859, 11 Stat. 385; § 2275, Rev.Stat.1875; slightly revised and republished in 43 U.S.C.A. § 851.

By virtue of this statute, appellant claims that the occupancy of D. Hendrix prevented that portion of section 16 from becoming reserved to the State and hence title remains in the United States (since it was never patented), from whom he hopes to obtain a patent after eliminating the adverse claim of the State of Utah.

However, it is clear from the wording of the statute itself that a settler's claim of possession itself was not intended as a complete bar to the State's rights in the property, for it provides merely that "said sections *shall be subject* to the preemption claim" and provides lieu lands only for "such as may be *patented* by preemptors." In the present case, an affidavit by the Manager of the Bureau of Land Management for Utah, submitted with the Motion for Summary Judgment, shows that no application for homestead entry or declaratory statement of pre-emptive claim has ever been filed upon this land. Therefore, there has never been any compliance with the laws passed in 1843 and 1862 providing for pre-emption rights and requiring that the pre-emptioner file his declaratory statement within three months from the filing date of the township plat. Revised Statutes of 1878, §§ 2265, 2266.

The U. S. Supreme Court has construed these statutes as not conferring any vested interest upon a mere settler, even though he might improve the property, build a home thereon, and reside there. In the case of Gonzales v. French, 164 U.S. 338, 17 S.Ct. 102, 105, 41 L.Ed. 458, the Court reiterated the language of Shepley v. Cowan, 91 U.S. 330, 23 L.Ed. 424:

" 'In those cases, Frisbie v. Whitney [9 Wall. 187, 19 L.Ed. 668] and the Yosemite Valley Case [In re Yosemite Valley, 15 Wall. 77, 21 L.Ed. 82], the court decided that a party, by mere settlement upon the public lands, with an intention to obtain a title to the same under the pre-emption laws, did not thereby acquire such a vested interest in the premises as to deprive congress of the power to dispose of the property; that, notwithstanding the settlement, congress could reserve the lands for sale whenever they might be needed for public uses, as for arsenals, fortifications, lighthouses, customhouses, and other public purposes for which real property is required by the government; that the settlement, even when accompanied with an improvement of the property, did not confer upon the settler any right in the land as against the United States, or impair in any respect the power of congress to dispose of the land in any way it might deem proper; that the power of regulation

and disposition conferred upon congress by the constitution only ceased when all the preliminary acts prescribed by law for the acquisition of the title, including the payment of the price of the land, had been performed by the settler. When these prerequisites were complied with, the settler for the first time acquired a vested right in the premises of which he could not be subsequently deprived. He was then entitled to a certificate of entry from the local land officers, and ultimately to a patent of the United States. Until such payment and entry, the acts of congress gave to the settler only a privilege of pre-emption in case the lands were offered for sale in the usual manner; that is, the privilege to purchase them in that event in preference to others.' "

The case of Buxton v. Traver, 130 U.S. 232, 9 S.Ct. 509, 32 L.Ed. 920, characterizes the pre-emption statutes as an offer by the government, conditioned upon filing a declaratory statement and performing certain other acts. Unless these conditions are met, there is no acceptance of the offer and no rights arise in favor of the settler. See also Rio Grande Western Railroad Co. v. Stringham, 38 Utah 113, 110 P. 868, affirmed on appeal on another issue, 239 U.S. 44, 36 S.Ct. 5, 60 L.Ed. 136.

Under the U. S. Supreme Court cases cited supra the only possible conclusion to be drawn in the present case is that appellant has no rights whatever in the property. Appellant's predecessors in title failed to make or file an actual entry in the land office. Their mere possession did not prevent the rights of the territory from attaching to the school sections when the survey was made. Appellant, likewise, could not succeed to any possessory rights which they might have had, because such rights were personal and could not be assigned or transferred under Section 2263, Revised Statutes 1878.

Judgment affirmed. Costs to respondent.

CROCKETT, WADE, HENRIOD and WORTHEN, JJ., concur.